[Docket No. 54]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ROBERT W. FRANKLIN, JR., <br><br> Plaintiff, <br><br> v. <br><br> RIVERSIDE TOWNSHIP, et al., <br><br> Defendants. | Civil No. 17-8838 (RMB/KMW) <br><br> OPINION |

APPEARANCES:

THE RUSSELL FRIEDMAN LAW GROUP, LLP
By: Russell C. Friedman, Esq.
3000 Marcus Avenue, Suite 2E03
Lake Success, New York 11042
    *Attorneys for Plaintiff*

RAYMOND COLEMAN HEINOLD, LLP
By:  Douglas L. Heinold, Esq.
    Stephen E. Raymond, Esq.
325 New Albany Road
Moorestown, New Jersey 08057
    *Attorneys for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    In this suit pursuant to 42 U.S.C. § 1983, Plaintiff Robert W. Franklin, Jr. asserts that Defendants, Township of Riverside Police Officers Michael Megara and Timothy Marano, violated Franklin's federal constitutional rights by allegedly using excessive force during Franklin's arrest, and then allegedly

1

delaying medical care for the injuries Franklin sustained during the arrest. Franklin was also charged with, and later convicted of, disorderly conduct and resisting arrest.

Defendants move for summary judgment. For the reasons stated herein, the motion will be granted in part and denied in part.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

In the afternoon of May 28, 2016, Defendant Police Officers Marano and Megara arrived at the Riverside Gas Station, dispatched to respond to a payment dispute between the gas station attendant and Plaintiff Franklin. (Defendants' Statement of Undisputed Facts ¶¶ 12-13) The encounter between Franklin and Officers Marano and Megara was recorded by the gas station's surveillance camera. The surveillance camera's recording (Defendants' Exhibit A) -- which contains only video; no audio-- shows the following.

When Defendant Marano first arrives at the gas station, a few minutes before 3:20 p.m., Franklin and his elderly godmother[1], who was a passenger in Franklin's Dodge Ram truck, are standing immediately next to Franklin's vehicle, which is parked next to a gas pump, with the driver's side door open. (Defs' Ex. A)  Franklin appears to be talking calmly with

---

[1] At the time of his deposition, Franklin testified that his godmother was 74 years old. (Franklin Dep. p. 33)

2

Officer Marano as the gas station attendant approaches and Officer Megara arrives in a separate police cruiser. (Id.) Officer Megara exits his vehicle and appears to talk to Franklin, his godmother, Officer Marano, and the gas station attendant from approximately 4 to 6 feet away, on the other side of the gas pump. (Id.) Then, Officer Megara walks with the gas station attendant off camera. It is undisputed that Officer Megara and the attendant went into the gas station to view the surveillance video of Franklin's payment to the gas station attendant. (Defs' Statement of Undisputed Facts ¶ 21) Officer Marano remains with Franklin and his godmother standing next to the vehicle. (Id.) Franklin appears calm as Officer Marano walks off camera to join Officer Megara and the gas station attendant inside the gas station. (Id.) Franklin then helps his godmother around the vehicle, and she takes a seat in the front passenger's seat. (Id.) Franklin also takes a seat, in the driver's seat, and closes the door. (Id.)

Several minutes pass, during which Franklin and his godmother appear to be simply sitting in the vehicle with the car doors closed and the driver's side window open. (Defs' Ex. A) Then Officer Marano speaks to Franklin through the open window, with Officer Megara standing behind Marano, within earshot. (Id.) Franklin and Officer Marano appear to talk calmly to each other for several minutes while Officer Megara

3

simply observes. (Id.) Then, the gas station attendant approaches the driver's side window, joining Officer Marano. (Id.) The attendant accepts cash from Franklin and then walks away. (Id.) At this point, Franklin appears to become more animated in his movements, although he remains seated in his vehicle with the door closed. (Id.) Officer Megara steps forward, next to Officer Marano, and both officers continue to talk to Franklin through the open driver's side window. (Id.) Officer Megara then opens the driver's side door, and Officer Marano joins him such that both officers are standing inside the open door, directly next to Franklin who remains seated. (Id.) The open door partially obscures the camera's view of which officer grabbed which of Franklin's arms first, however, Franklin can be seen leaning away, or pulling one of his arms away, from the officers.[2] Next, in one swift motion, both officers appear to pull Franklin by his arms from his car, and in so doing, Franklin-- who does not appear to be entirely cooperative, but may not be actively resisting-- somehow moves forward headfirst into the gas pump. (Id.) The video is unclear as to whether Franklin uncontrollably falls or trips into the gas pump, or whether the officers deliberately slammed

---

[2] At the time of his deposition in this case, Franklin was six foot and a half and weighed 258 pounds. (Franklin Dep. p. 8)

4

Franklin's head into the gas pump. (Id.)  Thereafter, Officer Megara handcuffs Franklin without incident, and both officers help to place Franklin in the back of Officer Megara's car. (Id.; Defs' Statement of Undisputed Facts ¶ 45)

   Regarding the moments leading up to Franklin's removal from the vehicle, Officer Marano testified that he "repeatedly"-- "two or three times"-- "asked" Franklin, through the open driver's side window, to leave, as the payment dispute had been resolved when Franklin gave cash to the attendant.  (Marano Dep. p. 88-89; see also Megara Dep p. 91-92)  Franklin, however, did not leave, and he "expressed his discontent" with having to pay the attendant when he stated that he had already paid in full. (Marano Dep. p. 90)  When Franklin did not leave, Officer Megara made the decision to arrest Franklin, advised that Franklin was being placed under arrest, and then reached into the car to handcuff Franklin's left hand.  (Id. at p. 91; Megara Dep. p. 101, 106-07)  Officer Marano further testified that "Mr. Franklin had ahold of the steering wheel . . . and despite being told repeated times to get out of the vehicle by Officer Megara, he did not release his hand from the steering wheel"; "[h]is hands were fixed to the steering wheel and he was refusing to let go."  (Marano Dep. p. 91, 103; Megara Dep. p. 106, 108) When asked how Franklin "went headfirst into a gas pump," Officer Marano testified, "I'm not honestly sure."  (Marano Dep.

5

p. 108)  Officer Megara testified that Franklin "voluntarily ran into the gas pump."  (Megara Dep. p. 109, 112)

Franklin's version of events is somewhat different. Franklin testified that he was told he was under arrest immediately after he paid the gas station attendant, and that he does not recall being asked to leave the gas station.  (Franklin Dep. p. 42, 47)  As to what happened next, Franklin testified, "I'm like, What? . . . I guess I wasn't moving fast enough for him because they charged me with resisting arrest because I wasn't fast enough, and they put the handcuffs on me, jerked me out [of the vehicle]."  (Id. at p. 45)  As to how Franklin hit his head on the gas pump, Franklin testified, "when I tried to [get out of my vehicle], I was led into the gas pump." (Id. at p. 51)[3]  Franklin further testified that once he was in Officer Megara's car-- under arrest but still at the gas station-- he asked Officer Megara to "call the ambulance" for his injuries. (Id. at p. 59)  Officer Megara also testified that, immediately after Franklin was injured, Franklin "stated that he . . . wanted to go to the hospital" and Megara "immediately" called for EMS.  (Megara Dep. p. 113)

---

[3] Franklin's opposition brief uses words such as "slammed" and "thrown" to describe how Defendants allegedly caused Franklin's head to hit the gas pump.  However, Franklin, in his deposition, repeatedly used the word "led" (Franklin Dep. p. 51, 55), and did not use any version of "slam" or "throw" to describe what the Defendants allegedly did to him.

6

It is undisputed that Franklin received medical treatment from Riverside EMS while being processed at the police station, and that after processing was completed, EMS transported Franklin by ambulance to the hospital. (Defs' Statement of Undisputed Facts ¶ 51)  At the hospital, Franklin was diagnosed with a fractured neck, and his treatment included wearing a cervical collar. (Pl's Counterstatement of Undisputed Facts ¶¶ 58-59)

Franklin was eventually convicted of disorderly conduct and resisting the arrest, and those convictions were affirmed on appeal. (Defs' Statement of Undisputed Facts ¶¶ 52-55)  Notably, Law Division Judge Kelly found, after watching the surveillance video of Franklin's arrest:

> For whatever reason, Mr. Franklin decided he wasn't leaving. He stayed. He was directed to leave again, and he did not. The police told him, look, if you don't leave we're going to lock you up.  We're going to arrest you. He refused to leave, and began yelling at the officers . . . .
> He was then arrested. He was told he was being placed under arrest. . . . Then there became the physical struggle to get him out. . . . [H]e refused to come out, and [the officers] were pulling him out of the car, and finally he came out, and ran, kind of strangely, headfirst into the gas pump that was on the island . . . . .

(Defs' Ex. H at p. 23-24)[4]

---

[4]  The Law Division's judgment was affirmed on appeal by the Appellate Division. (See Defs' Ex. K)  Franklin contends that "the [resisting arrest] conviction is wholly irrelevant to the circumstances of this case."  (Opposition Brief, p. 8)  To the

The Complaint asserts ten counts, however, in opposition to Defendants' instant Motion for Summary Judgment, Plaintiff states that he "withdraws" all of his claims (Opposition Brief, p. 1-2) except three claims against Defendants Marano and Megara: (1) § 1983 / Fourth Amendment excessive force; (2) § 1983 / Fourteenth Amendment delay of medical care; and (3) assault and battery.[5]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should

---

contrary, "whether [Plaintiff was] actively resisting arrest or attempting to evade arrest by flight" is a factor the jury will be asked to consider. Graham v. Connor, 490 U.S. 386, 396 (1989).

[5] As to the "withdrawn" claims, the Court expects that Plaintiff will promptly file a stipulation of dismissal. See Fed. R. Civ. P. 41(a)(1)(A)(2).

8

be resolved against the moving party." Meyer v. Riegel Prods. Corps., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for

summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

**III. ANALYSIS**

  **A.** **Qualified Immunity**

Defendants move for summary judgment asserting that they are entitled to qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted). The qualified immunity analysis first considers whether there was a constitutional violation and, if so, whether the right violated was clearly established at the time of the misconduct. Id. at 232. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" Carroll v. Carman,

10

135 S.Ct. 348, 350 (2014) (quoting Andersen v. Creighton, 483 U.S. 635, 640 (1987)).

(1)     Excessive Force

The Fourth Amendment permits the use of "reasonable" force. Graham v. Connor, 490 U.S. 386, 396 (1989).  "[E]ach case alleging excessive force must be evaluated under the totality of the circumstances." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

The extent of the resulting injuries from the force used is one of many factors that must be considered in evaluating reasonableness.  See Sharrar, 128 F.3d at 822.  In this case, Franklin's injury is relatively severe; the undisputed record demonstrates that Franklin fractured his neck.  However, there is an issue of disputed fact as to how the injury occurred-- i.e., whether the Defendants forced Franklin forward, head first, into the gas pump or whether Franklin uncontrollably fell or tripped into to gas pump while Defendants were attempting to control and handcuff Franklin.  Thus, the record evidence raises sufficient issues of material fact as to the reasonableness of the seizure at issue to support submitting the excessive force claim to the jury.

Additionally, the Court holds that Defendants are not entitled to qualified immunity at summary judgment.  The Third Circuit has explained,

11

> [i]n the context of excessive force claims, we have relied on the factors set forth in Graham and Sharrar in evaluating whether an officer made a reasonable mistake. We have stated that these factors are well-recognized, and that when an officer applies them in an unreasonable manner, he is not entitled to qualified immunity.

Green v. New Jersey State Police, 246 F. App'x 158, 162-63 (3d Cir. 2007). Disputes of historical material fact exist as to how Franklin hit his head. Thus, the Court will resolve the issue of qualified immunity by way of special interrogatories to the jury, and, if necessary, Defendants may make an appropriate motion at the appropriate time.

The Motion for Summary Judgment on the § 1983 excessive force claim will be denied.[6]

(2) Delay of Medical Care

Franklin also asserts that Defendants violated his constitutional rights when they allegedly delayed treatment for the injuries Franklin sustained during his arrest.

---

[6] The parties dispute the admissibility of the expert report and testimony of Defendants' witness, Frank Locantore, who opines that Defendants did not use excessive force. The Court need not, and does not, resolve this evidentiary issue at summary judgment. Disputed issues of material fact preclude summary judgment regardless of whether Mr. Locantore's report and testimony are admissible. Indeed, Mr. Locantore's opinion is based on Defendants' version of events, which Franklin disputes. In particular, Mr. Locantore's opinion is based on the asserted fact that Franklin "lurch[ed] or stumble[d] forward striking his head against the gas pump." (Defs' Ex. 1, p. 4)  As noted above, Franklin asserts that he did not lurch or stumble, but rather was led into the gas pump by Defendants.

12

Franklin was a pretrial detainee-- as opposed to a convicted prisoner-- thus, the Fourteenth Amendment's Due Process Clause governs his claim for inadequate medical care. Although "the contours of a state's due process obligations to [pretrial] detainees with respect to medical care have not been defined by the Supreme Court. . . . , it is clear that detainees are entitled to no less protection than a convicted prisoner is entitled to under the Eighth Amendment." A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 584 (3d Cir. 2004); see also Hubbard v. Taylor, 399 F.3d 150, 166-67 (3d Cir. 2005). Franklin must therefore establish that: (1) his injuries were "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) Defendants were "deliberately indifferent to [Franklin's] health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference is "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

It is undisputed that: (1) Franklin received emergency medical attention at the Riverside Police Station while he was being processed for his arrest; and (2) after processing was completed, Franklin was immediately transported to the hospital by ambulance. All of the record evidence indicates that Defendant Megara requested EMS while en route to the police

13

station from the gas station. (Defs' Ex. D-- Marano Dep. p. 125-26; Defs' Ex. C-- Dispatch Narrative; Defs' Ex. I-- EMS Report; Megara Dep. p. 113)  Indeed, Franklin himself testified:

> Q: . . . how long after you were arrested did you ask for medical attention?
>
> A: Immediately.
>
> . . .
>
> Q: How long was it before you received medical attention?
>
> A: I can't put an accurate time now on it, but I know it was awhile, but they probably did the best they could, but I don't know exactly.

(Franklin Dep. p. 122)

Franklin attempts to create an issue of fact by pointing to minor time discrepancies between the Dispatch Narrative (Defs' Ex. C), the EMS Report (Defs' Ex. I), and the time stamps on the gas station's surveillance video (Defs' Ex. A)-- all of which, as Defendants observe, came from different sources.  The discrepancies, however, cannot overcome the undisputed evidence that Franklin received emergency medical attention shortly after his injury occurred.  No reasonable factfinder could find on this record that Defendants unreasonably and unconstitutionally delayed medical care to Franklin.  Accordingly, Defendants' Motion for Summary Judgment as to the § 1983 / Fourteenth Amendment delay of medical care claim will be granted.

### B. Assault and Battery Claim

As discussed above with respect to the excessive force claim, issues of fact exist as to whether Defendants "led" Franklin forward, head first, into the gas pump or whether Franklin uncontrollably fell or tripped into to gas pump while Defendants were attempting to handcuff and control Franklin. Thus, summary judgment will be denied the assault and battery claim for the same reasons that summary judgment will be denied as to the § 1983 excessive force claim.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted as to the § 1983 delay of medical care claim, and denied as to all other remaining claims-- *i.e.*, the § 1983 excessive force claim, and attendant assault and battery claim. In light of the age of this case, a trial date will be set promptly. As discussed, the record presents two sides to this story which the jury will be called upon to evaluate. The jury will be required to answer the questions that remain in dispute, as set forth supra. The Court hastens to note-- for the benefit of the parties-- that while Franklin has "won the battle" at summary judgment, he may well "lose the war" at trial where, surely, witness credibility will be a key factor. In this regard, the Court notes that the Law Division found, after viewing the surveillance video, that Franklin "ran . . .

15

headfirst into this gas pump." (Defs' Ex. H, p. 24).  The issue of witness credibility was not before this Court at summary judgment.  An appropriate Order shall issue on this date.

Dated:    July 22, 2020                  s/ Renée Marie Bumb
                                        RENĔE MARIE BUMB, U.S.D.J.